David H. Stern (SBN 196408)
*dstern@bakerlaw.com*
Alex E. Spjute (SBN 229796)
*aspjute@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone: 310.820.8800
Facsimile: 310.820.8859

James F. Bennett (*pro hac forthcoming)*
*jbennett@dowdbennett.com*
**DOWD BENNETT, LLP**
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: 314.889.7300
Facsimile: 314.863.1272

*Attorneys for Defendants*
ANHEUSER-BUSCH INBEV WORLDWIDE, INC. and ANHEUSER-BUSCH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DENISE ANGIANO; CHARLEY KARPINSKI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ANHEUSER-BUSCH INBEV WORLDWIDE, INC., and ANHEUSER-BUSCH, LLC, and DOES 1 to 100, inclusive,

Defendants.

Case No.: 2:21-cv-01879-AB-RAO

[Assigned to Judge André Birotte Jr.]

**DEFENDANTS ANHEUSER-BUSCH INBEV WORLDWIDE, INC.'S AND ANHEUSER-BUSCH, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM (FRCP 12(b)(6) AND 9(b)) AND FOR LACK OF STANDING (FRCP 12(b)(1))**

Hearing Date: April 2, 2021
Time: 10:00 a.m.
Courtroom: 7B

*[Concurrently filed with Request for Judicial Notice; and Proposed Order]*

Complaint Filed: 11/24/2020
1st Am. Complt. Filed: 02/01/2021
Removed: 02/26/2021

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that at the date, time, and place noted above, or as soon thereafter as the matter may be heard, Defendants Anheuser-Busch InBev Worldwide, Inc. ("A-B InBev") and Anheuser-Busch, LLC ("A-B" or "Anheuser-Busch," together "Defendants") will and hereby do move the Court to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC") (ECF Doc. 1-2) pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief may be granted, and for lack of standing to pursue injunctive relief pursuant to Rule 12(b)(1).

This motion is made on the grounds that Plaintiffs fail to state a claim on which relief may be granted. To begin with, Plaintiffs claims under California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL") are barred because the FAC does not allege the absence of an adequate remedy at law, which is a prerequisite to the equitable relief sought. Moreover, they also fail because documents incorporated by reference in the FAC and subject to judicial notice demonstrate that the FAC rests on a false premise: contrary to what Plaintiffs repeatedly claim, the label for A-B's Beck's Non-Alcoholic malt beverage plainly states on the front and back of the bottle that the product "contains less than 0.5% alc. by vol.," right below the regulatory category of beer, "non-alcoholic." The label thus complies with the applicable federal regulation that requires this language and in fact was approved in a certificate of label approval issued by the relevant federal agency. As such, the product is subject to a "safe harbor" that precludes Plaintiffs' claims under California's UCL, CLRA, and FAL. In addition, the label, with its statement of alcohol content, precludes as a matter of law any finding that a reasonable consumer would be misled by Defendants' use of the federally-established "non-alcoholic" terminology. Accordingly, Plaintiffs' intentional and negligent misrepresentation claims, as well as their negligence and statutory consumer protection claims, must be dismissed. In addition, their tort-based

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims for negligence and negligent misrepresentation are properly barred by the economic loss doctrine.

The newly-added Magnuson-Moss Warranty Act claim also fails to state a claim because the FAC does not plead the prerequisites for the claim to be heard in federal court—namely, that there are at least 100 named plaintiffs and that no one has a claim for less than $25. Also, the FAC admits that no pre-suit notice was sent to the Defendants.

The newly-added implied warranty of merchantability claim fails to state a claim because Plaintiffs lack privity and the FAC fails to plead facts necessary to support such a claim. Also, the FAC admits that no section 2607 notice was sent to the Defendants before the FAC was filed.

Finally, the FAC's request for an injunction must be dismissed because Plaintiffs fail to plead facts to establish standing for future injunctive relief; quite the opposite, they each indicate their intention not to purchase a product that is not "alcohol free." Thus, they individually are not at risk of future harm from labeling for any non-alcoholic beer, as that category applies only to products that contain some amount of alcohol less than 0.5% abv.

This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and Request for Judicial Notice filed herewith, the papers and pleadings filed in this action, such other papers as may be filed with the Court, and such other evidence and argument as may be presented at the hearing on this motion.

///

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

This motion is made following the conference of counsel pursuant to L.R. 73, which took place on February 25, 2021.

Respectfully submitted,

Dated: March 5, 2021

**BAKER & HOSTETLER LLP**

By: */s/ David H. Stern*
DAVID H. STERN

*Attorneys for Defendants*
ANHEUSER-BUSCH INBEV WORLDWIDE, INC. and ANHEUSER-BUSCH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. BACKGROUND .......... 4

A. TTB Regulates Non-Alcoholic Beverages to Prevent Deception. .......... 4

B. The TTB-Approved Label Trumps the FAC's False Allegations About It. .......... 6

C. Plaintiffs' Complaint. .......... 7

III. ARGUMENT .......... 7

A. Dismissal Standard Under Rules 12(b)(6) and 9(b). .......... 7

B. Plaintiff's FAL, CLRA, and UCL Claims (Third, Fourth, and Seventh Causes of Action) Fail to State a Claim. .......... 8

1. The FAC Fails to Allege There Is No Adequate Remedy at Law for These Claims. .......... 8

2. The Safe Harbor Precludes Liability. .......... 9

3. The Label and Packaging Is Not Deceptive To the Reasonable Consumer. .......... 10

4. The Other Two Prongs of the UCL Claim Also Fail. .......... 15

5. There Can Be No CLRA Damages Claim Because Plaintiffs Filed This Suit When They Sent Their CLRA Notice Letter... 16

C. Plaintiffs' MMWA Claim (Sixth Cause of Action) Must Be Dismissed for Lack of Jurisdiction. .......... 16

D. Plaintiffs' Claim for Breach of Implied Warranty (Fifth Cause of Action) Fails to State a Claim. .......... 17

E. Claims for Intentional and Negligent Misrepresentation (First and Second Causes of Action) Fail to State a Claim. .......... 20

F. Plaintiffs' Negligence Claim (Eighth Cause of Action) Fails To State a Claim. .......... 21

G. Plaintiffs Lack Standing to Seek Injunctive Relief .......... 23

IV. CONCLUSION .......... 25


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ahern v. Apple*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)........15

*Alaei v. Rockstar, Inc.*,
224 F. Supp. 3d 992 (S.D. Cal. 2016)........9

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011)........10, 16, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........7

*Barber v. Nestle USA*,
154 F. Supp. 3d 954 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018)........8, 9

*Becerra v. Dr. Pepper/Seven Up*,
945 F.3d 1225 (9th Cir. 2019)........11, 13

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007)........7, 21

*Bily v. Arthur Young*,
3 Cal. 4th 370 (1992)........22

*Blanco v. Baxter Healthcare Corp.*,
158 Cal. App. 4th 1039 (2008)........18

*Bui v. Mercedes-Benz USA*,
2021 WL 242936 (S.D. Cal. Jan. 25, 2021)........22

*Cheslow v. Ghirardelli Chocolate*,
445 F. Supp. 3d 8 (N.D. Cal. 2020)........11

*Chong v. Nestle Waters N. Am., Inc.*,
2020 WL 7690175 (C.D. Cal. Nov. 30, 2020)........8, 12, 15

*Christ Apostolic Church v. Lakeland West Capital*,
2015 WL 4093775 (C.D. Cal. July 7, 2015)........20


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ........ 18, 19

*Cordes v. Boulder Brands USA*,
2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ........ 24

*Cruz v. Anheuser-Busch*,
2015 WL 3561536 (C.D. Cal. June 3, 2015) ........ 4, 6, 9, 10

*Curry v. Fred Olsen Line*,
367 F.2d 921 (9th Cir. 1966) ........ 19

*Davidson v. Kimberly-Clark*,
889 F.3d 956 (9th Cir. 2018) ........ 23, 24

*Dinan v. SanDisk*,
2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*, 2021 WL 488300 (9th Cir. Feb. 10, 2021) ........ 9, 11

*Ebner v. Fresh*,
838 F.3d 958 (9th Cir. 2016) ........ 10, 11

*Eidmann v. Walgreen Co.*,
2021 WL 764121 (N.D. Cal. Feb. 26, 2021) ........ 1, 11, 15

*Elias v. Hewlett-Packard*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ........ 11, 15

*Floyd v. American Honda Motor Co.*,
966 F.3d 1027 (9th Cir. 2020) ........ 17

*Freeman v. Time*,
68 F.3d 285 (9th Cir. 1995) ........ 12, 14

*Gibson v. Jaguar Land Rover N. Am. LLC*,
2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ........ 9

*Gitson v. Trader Joe's*,
2013 WL 5513711 (N.D. Cal. Oct. 4, 2013) ........ 12

*Goetten v. Owl Drug Co.*,
6 Cal. 2d 683 (1936) ........ 19

*Hanna v. Walmart, Inc.*,
2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ........ 9, 24



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hassell v. Uber Technologies, Inc.*,
2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) .................................................... 9

*Hastings v. Ford Motor Co.*,
2020 WL 6131712 (S.D. Cal. Oct. 19, 2020).................................................. 18

*Hodes v. Van's Int'l Foods*,
2009 WL 10674101 (C.D. Cal. June 23, 2009)................................................ 21

*Hodsdon v. Mars*,
891 F.3d 857 (9th Cir. 2018)........................................................................ 15

*Jackson v. General Mills*,
2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ................................................ 24

*Jones v. Tracfone Wireless, Inc.*,
2021 WL 411347 (N.D. Cal. Feb. 4, 2021)...................................................... 9

*Ketayi v. Health Enrollment Gp.*,
2021 WL 347687 (S.D. Cal. Feb. 2, 2021) ...................................................... 8

*Klein v. Duchess Sandwich Co.*,
14 Cal. 2d 272 (1939)................................................................................... 19

*Lokey v. CVS Pharmacy*,
2021 WL 633808 (N.D. Cal. Feb. 18, 2021).................................................... 11

*Lopez v. Nissan N. Am.*,
201 Cal. App. 4th 572 (2011)........................................................................ 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................................................... 23

*Mexicali Rose v. Superior Ct.*,
1 Cal. 4th 617 (1992) (Mosk, J., dissenting) .................................................. 19

*Mix v. Ingersoll Candy Co.*,
6 Cal.2d 674 (1936)...................................................................................... 19

*Moore v. Mars. Petcare US*,
966 F.3d 1007 (9th Cir. 2020)....................................................................... 14

*In re Motor Fuel Temperature Sales Prac. Litig.*,
2013 WL 3795206 (D. Kan. July 19, 2013)...................................................... 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Osborne v. Subaru of Am., Inc.*,
198 Cal. App. 3d 646 (1988) .......... 18

*Outboard Marine v. Superior Ct.*,
52 Cal. App. 3d 30 (1975) .......... 16

*Painter v. Blue Diamond Growers*,
2017 WL 4766510 (C.D. Cal. May 24, 2017), *aff'd*, 757 Fed. App'x 517 (9th Cir. 2018) .......... 12

*Palomares v. Bear Stearns Residential Mortg.*,
2008 WL 686683 (S.D. Cal. Mar. 13, 2008) .......... 20

*Parent v. MillerCoors*,
2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) .......... 4, 10

*Pelayo v. Nestle USA*,
989 F. Supp. 2d 973 (C.D. Cal. 2013) .......... *passim*

*Quelimane Co. v. Steward Title Guaranty*,
19 Cal. 4th 26 (1998) .......... 22

*Robinson Helicopter v. Dana Corp.*,
34 Cal. 4th 979 (2004) .......... 22

*Sagastume v. Psychemedics Corp.*,
2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) .......... 8

*Schertzer v. Bank of Am.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) .......... 15, 24

*Seely v. White Motor Co.*,
63 Cal. 2d 9 (1965) .......... 22

*Simpson v. The Kroger Corp.*,
219 Cal. App. 4th 1352 (2013) .......... 11

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
2021 WL 689914 (S.D. Cal. Feb. 23, 2021) .......... 21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 8, 9

*In re Sony Grand WEGA*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) .......... 18

*In re Southern Cal. Gas Leak Cases*,
7 Cal. 5th 391 (2019) .......... 23

*Spokeo v. Robins*,
136 S. Ct. 1540 (2016) .......... 23

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 23

*Stiles v. Trader Joe's*,
2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .......... 12

*Tapia v. Davol, Inc.*,
116 F. Supp. 3d 1149 (S.D. Cal. 2015) .......... 18

*Turnier v. Bed Bath & Beyond*,
2021 WL 409720 (S.D. Cal. Feb. 5, 2021) .......... 9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 3, 8

*Vess v. Ciba–Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) .......... 7

*Williams v. Apple, Inc.*,
2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) .......... 9

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 10

*Yu v. Dr. Pepper Snapple Grp.*,
2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) .......... 8, 13, 24

**Statutes**

15 U.S.C. § 2310(d)(1) .......... 16

Cal. Civ. Code § 1782 .......... 16

Cal. Com. Code § 2314 .......... 17

Cal. Com. Code § 2314(2) .......... 18

**Rules**

FRCP Rule 9(b) ........................................................................ 1, 7, 15, 20, 21

FRCP Rule 11 ........................................................................................... 1

Rule 12(b)(1)........................................................................................ 1, 24

FRCP Rule 12(b)(6)................................................................................ 1, 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Anheuser-Busch, LLC ("Anheuser-Busch" or "A-B") and Anheuser-Busch InBev Worldwide, Inc. ("A-B InBev", together the "Defendants") respectfully request an order dismissing Plaintiffs' First Amended Class Action Complaint ("FAC") for failure to state a claim upon which relief may granted pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and for lack of jurisdiction pursuant to Rule 12(b)(1).

## I. PRELIMINARY STATEMENT

A-B is the importer of Beck's Non-Alcoholic malt beverages ("Beck's NA"), which it sells to wholesalers in California. A-B InBev does not make or sell Beck's NA, and has no connection to this suit; despite knowing this fact, and Rule 11's duty to have a reasonable basis for pleadings, Plaintiffs persist in naming it as a Defendant.

Plaintiffs are two California consumers who complain that Beck's NA contains trace amounts of alcohol and allege that they were deceived into believing that the product was an alcohol-free beverage. (FAC ¶¶ 12-14.) The entire lawsuit is premised on the allegation that A-B called the malt beverage "non-alcoholic" and purportedly concealed the fact that it actually contained a very small amount alcohol.

It is hardly "concealment," however, when the alcohol content statement actually appears on both the front *and* back of the bottle, as well as on the bottom panel of the six-pack carrier. (Request for Judicial Notice ("RJN") Exs. A-B, D-E.) The federal government requires malt beverage labels in the non-alcoholic category to include the following statement: "contains less than 0.5% alcohol by volume." 27 C.F.R. § 7.71(e). The government-approved label for Beck's NA includes this statement in capital letters immediately below the category "non-alcoholic" on the front label, and restates it in lowercase on the back label.[1] (RJN Ex. C; *see id.* Exs. A, B.)

---

[1] On a motion to dismiss, this Court may take judicial notice of the labels, which are repeatedly cited and incorporated by reference in the Complaint. *See, e.g., Pelayo v. Nestle USA*, 989 F. Supp. 2d 973, 976 n.3 (C.D. Cal. 2013); *Eidmann v. Walgreen*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES




BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Co.*, 2021 WL 764121, at *3 (N.D. Cal. Feb. 26, 2021) (taking judicial notice of photos of product labels and granting dismissal). Although the FAC includes an unsourced "photo" of the front of a bottle (FAC ¶ 33), it is an incomplete depiction.




California law provides a safe harbor for sellers who follow specific legal requirements so that these requirements are not second-guessed by litigants or courts. That safe harbor applies here, precluding Plaintiffs' claims under the Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL").

Moreover, where, as here, a document referenced in the complaint contradicts the allegations plaintiffs make about it, a court may disregard those allegations. The Court may "treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

## II. BACKGROUND

### A. TTB Regulates Non-Alcoholic Beverages to Prevent Deception.

Judge Birotte of the Central District has explained the federal regulatory framework governing malt beverages such as Beck's NA:

> After the Twenty-First Amendment repealed prohibition in 1933, Congress enacted the Federal Alcohol Administration Act [27 U.S.C. § 201 *et seq.*], which governs the packaging and labeling of alcoholic beverages. The Secretary of the Treasury prescribes the FAA regulations. To conform to the FAA and participate in the interstate commerce of alcohol, one must display adequate information about the quality of the product while avoiding the display of falsities that may mislead consumers.
>
> The Secretary of the Treasury delegated the rule making authority under the FAA to the [Alcohol and Tobacco Tax and Trade Bureau (TTB)].

*Cruz v. Anheuser-Busch*, 2015 WL 3561536, at *3 (C.D. Cal. June 3, 2015); *see also Parent v. MillerCoors*, 2015 WL 6455752, at *5 (S.D. Cal. Oct. 26, 2015).

TTB has exclusive federal jurisdiction over the labeling of beer (which must have at least 0.5% or more alcohol by volume (abv)) and malt beverages, and it has enacted regulations governing what the labels for these products may and may not contain. *Parent*, 2015 WL 6455752, at *5. For example, TTB's regulations prohibit misleading brand names that convey erroneous impressions of the characteristics of the product, 27 C.F.R. § 7.23(b); label statements that are "false or untrue in any particular" or tend "to create a misleading impression," *id.* at § 7.29(a)(1); and any statement relating to analyses "which the appropriate TTB officer finds to be likely to mislead the consumer." *Id.* at § 7.29(a)(4).

TTB has specific regulations for how alcohol content is to be addressed on the malt beverage labels. Products with less than 0.5% abv cannot be called "beer," but instead must be called a "malt beverage," "cereal beverage," or "near beer." 27

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

C.F.R. § 7.24(d). The Beck's NA label includes "malt beverage" in black type at the bottom of the front label.

The term "non-alcoholic" on Beck's NA is not unique to A-B, but rather is a category established by TTB. TTB's labeling rules differ based on the alcohol content of the beverage. For example, beers with less than 2.5% abv may be described as "low alcohol" or "reduced alcohol." 27 C.F.R. §§ 7.71 (c)(2), (d). Labels for malt beverages with less than 0.5% abv may include the term "non-alcoholic" "provided the statement 'contains less than 0.5 percent (or .5%) alcohol by volume' appears in direct conjunction with it, in readily legible printing and on a completely contrasting background." *Id.* at § 7.71(e). TTB reserves the term "alcohol free" for those malt beverages that contain *no* alcohol at all. *Id.* at §§ 7.71(c)(3) ("A malt beverage may not be labeled with an alcoholic content of 0.0 alcohol by volume unless it is also labeled "alcohol free" and contains no alcohol"), (f) ("The term 'alcohol free' may be used only on malt beverages containing no alcohol"); *see also The Beverage Alcohol Manual: A Practical Guide, Basic Mandatory Labeling Information for Malt Beverages* 1-7. So, to review the categories:

0.5% - 2.5% ABV = "LOW ALCOHOL" or "REDUCED ALCOHOL"

0 < 0.5% ABV = NON-ALCOHOL

0.0% ABV = ALCOHOL FREE

This basic categorization system has been in place for more than three decades. *See* 54 Fed. Reg. 3594 (Jan. 25, 1989). Even Plaintiffs understand that "alcohol free" malt beverages have zero alcohol, while "non-alcoholic" malt beverages actually do contain trace amounts of alcohol. (*See* FAC ¶ 24.)

TTB reviews and approves each brewer's and importer's label for compliance with the regulations, and requires that malt beverages may not be released from customs without a valid certificate of label approval ("COLA") from TTB. *See* 27 C.F.R. §§ 7.31(a), 7.41. As Judge Birotte previously observed, "The COLA regulation is consistent with the statutory objective of the FAA—prohibit false or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

deceptive brand names from harming consumers and competitors." *Cruz*, 2015 WL 3561536, at *6 (citation omitted).

The label for Beck's NA was reviewed by TTB, and the approved COLA for Beck's NA is Exhibit C to Defendants' Request for Judicial Notice. (RJN Ex. C.) As one can see from the label, Beck's NA places the required alcohol content statement immediately beneath the term "non-alcoholic." (*Id.*) On the front label, it is in capitalized black type on a silver band; on the back label, it is in white lowercase type on a royal blue background. (*Id.*) A-B has used only this label for Beck's NA since the COLA was approved, which includes the entire putative class period. (*Id.*)

**B. The TTB-Approved Label Trumps the FAC's False Allegations About It.**

Despite the alcohol content statement that is displayed on the front and back labels of Beck's NA, the FAC is grounded on false allegations that it is not:

- "While *some* Beck's beer bottles contain the required warning that the beverage contains some alcohol, many of those Beck's beer bottles do not contain this warning in readily legible printing or on a completely contrasting background." (FAC ¶ 10.)
- "Defendants' deceptive and misleading practice of labeling Beck's beer as 'non-alcoholic,' without including the required warning that the beverage 'contains less than 0.5 percent (or .5%) alcohol by volume' . . . ." (FAC ¶ 4.)
- Defendants "deceive[] consumers into believing that they are consuming a malt beverage with no alcohol content whatsoever . . . ." (FAC ¶ 9.)
- "Defendants fail to warn consumers that Beck's beer contains alcohol, leading reasonable consumers to believe they are consuming alcohol free beer." (FAC ¶ 24.)
- "Plaintiffs believed that the 'non-alcoholic' term on Beck's beer, *without any information to the contrary*, meant that Plaintiffs would not be consuming any alcohol." (FAC ¶ 34 (emphasis added).)

These allegations are not entitled to the traditional presumption of truth that ordinarily applies in motions to dismiss. *See infra* at III.A. & III.B.3.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. Plaintiffs' Complaint.

Plaintiffs allege that they "were induced to make purchases that they would not have made if they were not misled about the fact that Beck's non-alcoholic beer contains [alcohol]." (FAC ¶ 12.) The FAC asserts eight causes of action on behalf of Plaintiffs and a putative statewide class: violations of California's FAL, UCL, and CLRA; intentional misrepresentation; negligent misrepresentation; breach of implied warranty, breach of the Magnuson-Moss Warranty Act, and negligence. As pled, none of these causes of action acknowledges the federal alcohol content statement that actually appears on the front and back labels of each bottle of Beck's NA, as approved by TTB.

## III. ARGUMENT

### A. Dismissal Standard Under Rules 12(b)(6) and 9(b).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court generally accepts a complaint's allegations as true and construes those allegations in the light most favorable to the plaintiff, "'a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations.'" *Pelayo v. Nestle USA*, 989 F. Supp. 2d 973, 977 (C.D. Cal. 2013) (citations omitted).

Claims sounding in fraud also must satisfy the Rule 9(b) particularity standard. *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). The plaintiff must plead "the who, what, when, where, and how of the misconduct charged," and facts explaining *why* the statement was false when made. *Id.* at 1106.

Where a complaint references the contents of a document and there is no dispute as to its authenticity, it may be considered incorporated by reference. *See*,

*e.g.*, *Chong v. Nestle Waters N. Am., Inc.*, 2020 WL 7690175, at *1 (C.D. Cal. Nov. 30, 2020); *Yu v. Dr. Pepper Snapple Grp.*, 2020 WL 5910071, at *3 (N.D. Cal. Oct. 6, 2020). The court "may treat the document as part of the complaint, and thus assume that its contents are true for purposes of the motion to dismiss." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Barber v. Nestle USA*, 154 F. Supp. 3d 954, 958 n.1 (C.D. Cal. 2015), *aff'd*, 730 F. App'x 464 (9th Cir. 2018).

**B. Plaintiff's FAL, CLRA, and UCL Claims (Third, Fourth, and Seventh Causes of Action) Fail to State a Claim.**

**1. The FAC Fails to Allege There Is No Adequate Remedy at Law for These Claims.**

The FAL, CLRA, and UCL each provide for equitable remedies. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). The federal common law pleading rules for equitable relief apply even to claims based on California's consumer protection statutes that provide for equitable relief:

> Regardless of whether California authorizes its courts to award equitable restitution under the UCL and CLRA when a plain, adequate, and complete remedy exists at law, we hold that federal courts rely on federal equitable principles before allowing equitable restitution in such circumstances. And because Sonner fails to demonstrate that she lacks an adequate legal remedy in this case, we affirm the district court's order dismissing her claims for restitution.

971 F.3d at 845; *see also id.* at 844 ("the operative complaint does not allege that Sonner lacks an adequate legal remedy").

Here, the FAC's first prayer for relief is "compensatory damages," and the FAC does *not* plead in the UCL, FAL, or CLRA causes of action any facts to establish that Plaintiffs have no adequate remedy at law. Accordingly, the FAC fails to plead a necessary element for each of these claims, and they each should be dismissed. *See, e.g.*, *Ketayi v. Health Enrollment Gp.*, 2021 WL 347687, at *19-*20 (S.D. Cal. Feb. 2, 2021) (applying *Sonner* and dismissing UCL and FAL restitution claims for failure to plead lack of an adequate remedy at law); *Sagastume v. Psychemedics Corp.*, 2020

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (dismissing UCL claims); *Williams v. Apple, Inc.*, 2020 WL 6743911, at *10 (N.D. Cal. Nov. 17, 2020) (dismissing FAL and UCL claims); *Hanna v. Walmart, Inc.*, 2020 WL 7345680, at *6 (C.D. Cal. Nov. 4, 2020); *Turnier v. Bed Bath & Beyond*, 2021 WL 409720, at *4 (S.D. Cal. Feb. 5, 2021); *Jones v. Tracfone Wireless, Inc.*, 2021 WL 411347, at *2 (N.D. Cal. Feb. 4, 2021); *Gibson v. Jaguar Land Rover N. Am. LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (applying *Sonner* to dismiss UCL and CLRA claims); *cf. Hassell v. Uber Technologies, Inc.*, 2020 WL 7173218, at *8 (N.D. Cal. Dec. 7, 2020) (applying *Sonner* to dismiss § 17200 claim for equitable relief).

**2. The Safe Harbor Precludes Liability.**

Here, A-B followed 27 C.F.R. § 7.71(e) and included on the front and back Beck's NA labels the precise language TTB requires to disclose the alcohol content of non-alcoholic malt beverages. Moreover, A-B submitted its label to TTB for the agency's review and approval, which is conducted in part to prevent deceptive labeling. TTB approved the label and issued a COLA. (RJN Ex. C.) Both of these actions—actual compliance with a specific regulation, *and* TTB's label review and approval—are independent reasons why the safe harbor precludes Plaintiffs' attempt to use the UCL, FAL, and CLRA to declare this government-approved conduct unlawful.[2]

As the court recognized in *Cruz*, "Where state or federal law 'has permitted certain conduct or considered a situation and concluded that no action should lie, courts may not override that determination.'" 2015 WL 3561536, at *3; *see also Barber*, 154 F. Supp. 3d at 962 (where legislature mandated only a limited disclosure, compliance was a safe harbor from UCL claims). The safe harbor applies not just to

[2] Although the safe harbor is most often discussed in the context of UCL claims, the safe harbor also bars claims under the CLRA and FAL. *See, e.g.*, *Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 1000-02 (S.D. Cal. 2016) (UCL and CLRA); *In re Motor Fuel Temperature Sales Prac. Litig.*, 2013 WL 3795206, at *18 (D. Kan. July 19, 2013) (UCL and CLRA); *see also Dinan v. SanDisk*, 2020 WL 364277, at *36-*37 (N.D. Cal. Jan. 22, 2020), *aff'd*, 2021 WL 488300 (9th Cir. Feb. 10, 2021).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

state and federal statutes, but also to agency regulations and actions. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) (because gas dispensing systems were certified and regulated, safe harbor barred UCL and CLRA claims); *Cruz*, 2015 WL 3561536, at *4-5 (TTB regulations and COLA); *Parent*, 2015 WL 6455752, at *4-7 (TTB regulations that specifically permitted label to state product's trade name sufficiently invoked safe harbor protection).[3]

The *Cruz* court explained that the COLA process is consistent with the FAA's statutory objective of eliminating practices that Congress has judged to be unfair and deceptive, and it held that COLA approval by TTB means that the label is permitted under federal law and invokes the safe harbor. *Cruz*, 2015WL 3561536, at *5.

### 3. The Label and Packaging Is Not Deceptive To the Reasonable Consumer.

Even if California law did not provide a safe harbor, the labels' actual text still would fail to support a claim because each bottle states (front and back) that the drink contains a small amount of alcohol. (RJN Exs. A-C.) Moreover, the regulatory categories of "non-alcoholic" and "alcohol free" malt beverages have existed for more than 30 years (*see supra* at II.A.), and reasonable consumers know that if they want no alcohol whatsoever, they want an "alcohol free," rather than "non-alcoholic," beverage. And although the six-pack carrier and multipack box state only the category of beverage on the sides, the bottom panel contains the same alcohol content statement as the bottles, just above the direction: "QUESTIONS/COMMENTS PLEASE CALL 1-888-287-2400." (RJN Exs. D & E.)

Plaintiffs' UCL, CLRA, and FAL claims all use the "reasonable consumer" standard. *See, e.g., Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Pelayo*, 989 F. Supp. 2d at

[3] *Accord Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572, 592-93 (2011) (odometers that qualified as "correct" under existing regulations were entitled to safe harbor from UCL and CLRA claims that defendant misrepresented their accuracy or had a duty to disclose their potential to overregister distances traveled).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

977. "As a result, courts often analyze these three statutes together." *Elias v. Hewlett-Packard*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).

The "reasonable consumer" standard "requires more than a mere possibility that [the challenged product packaging] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Becerra v. Dr. Pepper/Seven Up*, 945 F.3d 1225, 1228 (9th Cir. 2019); *Ebner*, 838 F.3d at 965. Rather, a plaintiff must show a probability that a significant portion of ordinary consumers, "acting reasonably under the circumstances, could be misled." *Pelayo*, 989 F. Supp. 2d at 977-78.

"District courts also recognize that where the actual ingredients are disclosed, a plaintiff may not ignore" the disclosure, and "no reasonable consumer could be deceived . . . when the product's label plainly disclosed" the fact. *Cheslow v. Ghirardelli Chocolate*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020); *see also Eidmann v. Walgreen Co.*, 2021 WL 764121, at *4-*7 (N.D. Cal. Feb. 26, 2021) (dismissing with prejudice FAL, CLRA, and UCL claims that labeling on identically-formulated "infant" and "children's" pain relievers was misleading, holding that reasonable consumers could not be deceived because the facts were on the labels); *Lokey v. CVS Pharmacy*, 2021 WL 633808, at *4 (N.D. Cal. Feb. 18, 2021) (on facts similar to *Eidmann*, dismissing FAL, CLRA, and UCL claims because "nothing about the labels is misleading about the products or their composition," and "the labels are accurate"); *Dinan v. SanDisk*, 2020 WL 364277, at *7 (N.D. Cal. Jan. 22, 2020) ("allegations do not satisfy the reasonable consumer test where the packaging containing the alleged misrepresentation includes disclosures that make the meaning of the representation clear"), *aff'd*, 2021 WL 488300 (9th Cir. Feb. 10, 2021); *cf. Simpson v. The Kroger Corp.*, 219 Cal. App. 4th 1352, 1371-72 (2013) ("The labels on the products here clearly informed any reasonable consumer that the products have both butter and canola or olive oil.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Here, reasonable consumers cannot be deceived into believing Beck's NA is alcohol free because the product's front *and* back labels expressly state that it contains alcohol. (RJN Exs. A-C.) The packaging, too, contains an alcohol content statement on the bottom panel. (RJN Exs. D-E.) Dismissal is therefore proper. For example, in affirming dismissal of fraud-based claims involving sweepstakes material, the Ninth Circuit read the actual representations and rejected the plaintiff's interpretation as pled, concluding that "when read reasonably and in context, the promotion makes no such false representation." *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995). Similarly, in dismissing UCL, CLRA, and FAL claims alleging that use of the term "maple" was deceptive, a court in this district observed that "the Court owes no deference to the FAC's allegations that equate the meaning of 'maple' to 'maple syrup or maple sugar' as this equivalency is a legal conclusion." *Stiles v. Trader Joe's*, 2017 WL 3084267, at *4 (C.D. Cal. Apr. 4, 2017). Instead, the court read the product package and reached its own conclusion. *Id.* at *3 ("Where the packaging of a product is alleged to have misled consumers, the primary evidence in evaluating the reasonable consumer test is the packaging of the product."); *see also Chong*, 2020 WL 7690175, at *7 (relying on water bottle labels and a website to conclude that plaintiff's claim failed the "reasonable consumer" test as a matter of law).[4]

---

[4] When the Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate at the pleadings stage. *Pelayo*, 989 F. Supp. 2d at 978-80 (collecting cases and dismissing CLRA and UCL claims with prejudice because "to the extent there is any ambiguity regarding the definition of 'All Natural' . . . it is clarified by the detailed information contained in the ingredient list"); *Gitson v. Trader Joe's*, 2013 WL 5513711, at *7 (N.D. Cal. Oct. 4, 2013) ("reasonable consumer" would not be misled into thinking soy milk was dairy; the label said it was not); *Painter v. Blue Diamond Growers*, 2017 WL 4766510, at *2-3 (C.D. Cal. May 24, 2017), *aff'd*, 757 Fed. App'x 517 (9th Cir. 2018).

Plaintiffs here cannot meet the "reasonable consumer" test for at least three reasons. First, TTB's alcohol content statement for "non-alcoholic" malt beverages expressly informs consumers of the small amount of alcohol this category contains. A statement written by an agency charged with protecting the public must be presumed as a matter of law not to be deceptive to the "reasonable consumer."

Second, Plaintiffs admit that they themselves saw the labeling when they bought Beck's NA. (FAC ¶ 26 ("When Plaintiffs made their purchases, they saw the labeling . . . including the large prominent 'non-alcoholic' term . . . on the bottle labels.").) Moreover, the FAC admits that the statement, "contains less than 0.5% alc by vol," "clearly disclose[s]" that non-alcoholic products "contain[] some alcohol." (FAC ¶ 11 (referring to other brewers' packaging).) After taking judicial notice that the labels referenced in the FAC *actually do* contain the federal alcohol content statement (RJN Exs. A-E), *even Plaintiffs* have not pled that the *actual* Beck's NA label would mislead a significant portion of reasonable consumers. One simply cannot read the statement and reasonably conclude the product contains *no* alcohol whatsoever.

Third, for more than 30 years TTB's categorizations of malt beverages have provided that the only beverages which do not contain any alcohol whatsoever are those labeled "alcohol free." *See supra* at II.A. Even the FAC acknowledges the category of "alcohol free" malt beverages. (FAC ¶¶ 24-25.) In applying the "reasonable consumer" standard, courts take into account consumers' historic experience with the product category. *See, e.g.*, *Becerra*, 945 F.3d at 1230-31 (looking to consumers' longstanding experience with the category of diet soft drinks to hold that reasonable consumers could not be misled); *Yu*, 2020 WL 5910071, at 4-7 (looking to consumers' prior experience with food products to hold that a "reasonable consumer" would not believe the word "natural" precludes the possibility the product contained trace amounts of pesticides within FDA tolerances). The historic existence of TTB's "alcohol free" category makes it even less reasonable

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for a consumer to read the alcohol content statement and conclude that the product contains no alcohol at all.

The FAC suggests that the six-pack's use of the term "non-alcoholic" (which is part of the product's name) is deceptive because the package does not include an alcohol content statement. (FAC ¶ 7.) But it does, even including a toll-free number for questions and comments. *See supra* at p. 10, (RJN Exs. D-E.) More important, however, is that the term "non-alcoholic" has been used for more than 30 years to describe beverages that have a small amount of alcohol (less than 0.5%), while the term "alcohol free" has been the sole term used for beverages that have 0.0% alcohol during those decades. *See supra* at II.A. The reasonable consumer looking to avoid even trace amounts of alcohol knows to look for "alcohol free" beverages. And most important, the bottles—which Plaintiffs saw when they bought the product (FAC ¶ 26)—carry the alcohol content statement on the front and back labels—a statement that Plaintiffs admit "clearly discloses" (FAC ¶ 11) that the product contains some alcohol. (RJN Exs. A-C.)

The Ninth Circuit has observed that "qualifiers in packaging, usually on the back of a label or in ingredient lists, can ameliorate any tendency of the label to mislead" so long as they do not "conflict with . . . a front label claim." *Moore v. Mars. Petcare US*, 966 F.3d 1007, 1017 (9th Cir. 2020); *see also Freeman*, 68 F.3d at 289-90 (affirming dismissal of fraud-based claims based on flier that expressly stated the sweepstakes conditions, and they appeared "immediately next to the representations it qualifies and no reasonable reader could ignore it").

For the reasons discussed above, the "Non-Alcoholic" language on the front and back of Beck's NA bottles and on its six-pack carrier cannot, as a matter of law, be deemed to deceive "reasonable consumers" into believing the product is "alcohol free," and Plaintiffs thus have failed to state a claim under the UCL, CLRA, and FAL.

**4. The Other Two Prongs of the UCL Claim Also Fail.**

The UCL has two other prongs besides "fraud," and Plaintiffs fail to plead facts that support them, too. Notably, because the FAC relies on the same course of conduct for these prongs as it does for the "fraud" prong, they too must satisfy Rule 9(b). *See Chong*, 2020 WL 7690175, at *5.

Plaintiffs conclusorily allege that A-B's conduct violates the "unlawful" prong of the UCL (FAC ¶ 81), but this allegation is premised on the falsehood that A-B omitted the federal alcohol content statement from the Beck's NA label.[5] For the same reasons this allegation must be disregarded under the "fraud" prong of the UCL, it must be disregarded here. Without it, the FAC pleads no fact whatsoever to support the "unlawful" prong. *See Hodsdon v. Mars*, 891 F.3d 857, 865 (9th Cir. 2018); *cf. Elias*, 903 F. Supp. 2d at 858 (N.D. Cal. 2012) (dismissing UCL claim based on "unlawful" prong that was premised on other statutory causes of action that the court was dismissing). It should be noted that "when the claim under the UCL unlawful prong is grounded in fraud, the plaintiff must meet the heightened pleading standard under Rule 9(b)." *Eidmann*, 2021 WL 764121, at *8.

The FAC also pleads that A-B's business practices violate the "unfair" prong of the UCL. But this theory, too, rests on the same conduct alleged in the "fraud" prong—namely, Plaintiffs' false allegation that the label omits the required alcohol content statement. (FAC ¶ 103 ("without the required language that the beverage 'contains less than 0.5%'" abv).) The "unfair" claim thus fails for all the reasons previously discussed. It "overlap[s] entirely with the[] claims of fraud;" thus, *both* theories should be dismissed. *Ahern v. Apple*, 411 F. Supp. 3d 541, 561 (N.D. Cal. 2019); *Eidmann*, 2021 WL 764121, at *8. To the extent Plaintiffs attempt to plead a harm to competition (FAC ¶ 101), it is based on the same false allegation and has no factual support. *Schertzer v. Bank of Am.*, 445 F. Supp. 3d 1058, 1091 (S.D. Cal.

[5] The regulation, 27 C.F.R. § 7.71, expressly addresses statements of alcoholic content on *labels*, and TTB reviews *labels* to issue Certificates of Label Approval.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2020) ("Plaintiffs' stringing together of a handful of adjectives to describe Defendants' behavior does not excuse the fact that the [complaint] lacks facts to support this claim under the unfair prong.").[6]

**5. There Can Be No CLRA Damages Claim Because Plaintiffs Filed This Suit When They Sent Their CLRA Notice Letter.**

The CLRA requires a plaintiff to give notice to the manufacturer "[t]hirty days or more prior to the commencement of an action for damages." Cal. Civ. Code § 1782. It does this "to give the manufacturer . . . sufficient notice of alleged defects to permit appropriate corrections or replacements." *Outboard Marine v. Superior Ct.*, 52 Cal. App. 3d 30, 40 (1975). As the *Outboard Marine* court noted, "The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions whenever possible," and "this clear purpose may only be accomplished by a literal application of the notice provisions." *Id.* at 41.

The FAC admits that Plaintiffs filed suit *before* sending their CLRA notice letter. (FAC ¶ 81.) The CLRA damages claim should therefore be dismissed. *Cf. Alvarez*, 656 F.3d at 932 ("We therefore must conclude that Plaintiffs failed to plead that they provided reasonable notice under § 2607(3)(A) because their notice letter was sent to Defendants simultaneously with service of the complaint.").

**C. Plaintiffs' MMWA Claim (Sixth Cause of Action) Must Be Dismissed for Lack of Jurisdiction.**

The Magnuson-Moss Warranty Act provides a distinct cause of action for breach of express and implied warranty claims under state law; it may be brought in state court or, only if certain criteria are met, in federal court. *See* 15 U.S.C. § 2310(d)(1). The Act prohibits the exercise of federal jurisdiction over an MMWA claim where the amount in controversy of any individual claim is less than $25 or

[6] Notably, Plaintiffs do not plead any actual facts about why Defendants would even try to misrepresent a non-alcoholic product as an alcohol-free one, particularly when A-B launched its own alcohol-free brew, Budweiser Zero, into that product category last year. *See* https://budweiser.com/en/our-beers/budweiser-zero.html.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

where the action is brought as a class action, but has less than 100 *named* plaintiffs. *Id.* at § 2310(d)(3).

There are two—*not* 100—named plaintiffs here, and many putative class members would have claims for less than $25. The FAC pleads that BevMo! sold six-packs of Beck's NA for $6.99. (FAC ¶ 33.) People who bought only one, two, or three six-packs of Beck's NA would have damages of less than $25. Accordingly, the MMWA claim cannot be heard in federal court.

In *Floyd v. American Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020) the Ninth Circuit answered the question whether the Class Action Fairness Act—which provides federal subject matter jurisdiction over this action generally—overrides the jurisdictional exclusions in the MMWA. The court held that it does not, affirming the district court's dismissal of the MMWA claim. *Id.* at 1035-36.

The *Floyd* Court explained that:

> CAFA allows certain claims to proceed under diversity jurisdiction, while the MMWA provides for a distinct claim to be brought in federal court for certain state-law warranty violations. The two statutes would have to present an irreconcilable conflict to overcome the strong presumption against implied repeals. But the statutory language of the MMWA and CAFA is not irreconcilable—the MMWA simply prevents claims under that Act from proceeding in federal court absent the satisfaction of certain jurisdictional prerequisites. We can easily give effect to that command and apply CAFA in all other cases.

*Id.* at 1035 (affirming dismissal of MMWA claim).

In addition, the FAC admits that Plaintiffs did not send pre-suit MMWA notice to Defendants. (FAC ¶ 94.) This independently requires dismissal.

**D. Plaintiffs' Claim for Breach of Implied Warranty (Fifth Cause of Action) Fails to State a Claim.**

The FAC adds a new cause of action—breach of the implied warranty of merchantability (Cal. Com. Code § 2314)—but it fails to allege an essential element:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

privity of contract.[7] In *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), the court explained that "a buyer and seller stand in privity if they are in adjoining links of the distribution chain" and "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* at 1023.

Plaintiffs do not plead that they bought their products from A-B or A-B InBev, nor could they. A-B is the importer of Beck's NA; it does not sell to consumers. Under California's post-Prohibition Three-Tiered System, the brewer/importer is kept separate from retail sales. Instead, they sell to state-licensed wholesalers, who then sell to state-licensed retailers, who then sell to the public.

And the privity requirement applies, even though the product is a beverage. The FAC does *not* allege that Beck's NA is unfit for human consumption, unfit for the ordinary purposes for which such goods are used, or defective. Rather, it asserts only two violations of Cal. Com. Code § 2314(2), namely that the goods fail to: (a) "pass without objection in the trade under the contract description," and (f) "conform to the promises or affirmations of fact made on the container or label if any." (FAC ¶ 84.) But Plaintiffs are not commercial purchasers and they plead no "contract description" to even conform to. Subsection (a) does not apply to them, and the 30+ year usage in the trade of TTB's malt beverage categories makes it plain that a "non-alcoholic" beverage contains some amount of alcohol, and that only "alcohol free" beverages contain zero alcohol. *See supra* at II.A. With respect to subsection (f), the Court may take judicial notice of the "promise" on the labels: "CONTAINS LESS THAN 0.5% ALC BY VOL." (RJN Exs. A-C.)

[7] Privity "is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability." *Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59 (2008). *See also Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 (1988); *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1159 (S.D. Cal. 2015). Thus, "to state a claim for breach of an implied warranty, plaintiffs must establish vertical privity with the warrantor." *In re Sony Grand WEGA*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010); *see also Hastings v. Ford Motor Co.*, 2020 WL 6131712, at * (S.D. Cal. Oct. 19, 2020) (dismissing implied warranty claim for consumer's lack of privity).

The fact that the FAC *does not* plead the product is unfit for human consumption is important because it rules out the "foodstuffs" exception to the privity requirement that *Clemens* mentioned in passing. 534 F.3d at 1023. The foodstuffs exception had its genesis in early cases imposing on restauranteurs an implied warranty that their food is fit for human consumption.[8] It then was extended to the manufacturer of food distributed through wholesalers. *Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272 (1939) ("the warranty extended to *every consumer* is that the food is fit for the purpose for which it was intended, namely, for human consumption").

Justice Mosk has explained that the very nature of the "implied warranty" with respect to foodstuffs is different from other implied warranties:

> It was recognized early on that the warranty of fitness of food was not a matter of contract terms, but was instead a rule of liability imposed as a matter of public policy. It was based on a "distinct implied warranty peculiar to sales of food, although the obligation existed long before implied warranties were recognized. This implied warranty was not based on any reliance by the buyer upon the representations of the seller, or upon his skill and judgment, but was grounded squarely upon the public policy of protecting the public health … While a right of action in such a case is said to spring from a 'warranty' it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect public health."

*Mexicali Rose v. Superior Ct.*, 1 Cal. 4th 617, 636 (1992) (Mosk, J., dissenting) (citation omitted). The reason there is a so-called "foodstuffs exception" to privity is because "the so-called breach of warranty of fitness for food is really a tort, for which a species of strict liability is imposed." *See Curry v. Fred Olsen Line*, 367 F.2d 921, 927 n.27 (9th Cir. 1966). Where, as here, the food or beverage is not alleged to be

[8] *See, e.g., Mix v. Ingersoll Candy Co.*, 6 Cal.2d 674, 680 (1936) ("the obligation to furnish to patrons food 'reasonably fit' for human consumption"; *Goetten v. Owl Drug Co.*, 6 Cal. 2d 683, 686-87 (1936) (implied warranty that the food was wholesome and "free from foreign substances dangerous to the human system").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

unfit for human consumption, there is simply no reason for an exception to the privity rule that governs other consumer products.

In addition, the breach of the implied warranty of merchantability claim independently fails because Plaintiffs fail to allege pre-suit compliance with the notice and opportunity to cure requirements of § 2607. *Alvarez*, 656 F.3d at 932.

**E. Claims for Intentional and Negligent Misrepresentation (First and Second Causes of Action) Fail to State a Claim.**

The elements of these causes of action are nearly identical except for the speaker's state of mind. Plaintiffs must allege facts to support:

(1) a misrepresentation of fact;

(2) (intentional) knowledge that the representation was false; or (negligent) without reasonable ground for believing it to be true;

(3) with the intent to induce another's reliance on the fact misrepresented;

(4) justifiable reliance on the misrepresentation; and

(5) resulting damage.

*Palomares v. Bear Stearns Residential Mortg.*, 2008 WL 686683, at *4 (S.D. Cal. Mar. 13, 2008); *Christ Apostolic Church v. Lakeland West Capital*, 2015 WL 4093775, at *4 (C.D. Cal. July 7, 2015) ("As with intentional misrepresentation, claims for negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

These claims fail at the first element because the labels they refer to *do* contain the federal alcohol content statement; so does the six-pack carrier. (RJN Exs. A-E.) The claims also fail at the third element, as Plaintiffs plead no facts to establish any intent on A-B's part to induce reliance.[9] As for the fourth element, they plead no facts to establish that any reliance was justifiable, particularly in light of the alcohol

[9] Why would Defendants intend to deceive people into believing Beck's NA is alcohol free when A-B has its own alcohol-free product that consumers could buy instead? The FAC pleads no facts about intent that could answer this question.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

statement on the front and back labels (RJN Exs. A-C), Plaintiffs' admission that they saw the labels (FAC ¶ 26), and their admission that the federal alcohol statement "clearly discloses" that non-alcoholic beer contains some alcohol (FAC ¶ 11).

These causes of action are also fatally deficient with respect to the second element, Defendants' state of mind. The FAC pleads nothing but legal conclusions; no facts. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do" to establish plausibility, let alone meet the particularity standard of Rule 9(b). *Twombly*, 550 U.S. at 555. Where, as here, the manufacturer's label has specific regulatory approval and uses the language required by a federal regulation, particularized facts must be pled to show intent to defraud or negligent breach of a duty to inform. Plaintiffs have failed to do so, and their claim should be dismissed. *See, e.g.*, *Hodes v. Van's Int'l Foods*, 2009 WL 10674101, at *3 (C.D. Cal. June 23, 2009) (dismissing such claims based on "conclusory allegations that the 'Defendants knew [the nutrition facts] to be false,' and that 'Defendants made the inaccurate representations . . . with intent to deceive the general public'"). One can hardly intend to conceal that which he includes on the product's front and back labels.

Finally, the negligent misrepresentation claim is barred by the economic loss doctrine, which is discussed below. *See infra* at III.F.; *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 2021 WL 689914, at *14 (S.D. Cal. Feb. 23, 2021) (collecting cases dismissing negligent misrepresentation claims because of economic loss doctrine).

**F. Plaintiffs' Negligence Claim (Eighth Cause of Action) Fails To State a Claim.**

There is little difference between Plaintiffs' eighth cause of action for negligence and their second cause of action for negligent misrepresentation. Both are premised on putting the term "non-alcoholic" on "Beck's beer bottles and packages" without the alcohol content statement. (*Cf.* FAC ¶¶ 56-57, 108.) These conclusory

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

allegations, which state legal conclusions and parrot elements of causes of action, are insufficient to plead a cause of action for all of the reasons identified above.

Plaintiffs' negligence claim is also barred by the economic loss doctrine. The California Supreme Court has long held that plaintiffs may not bring negligence claims for purely economic damages absent a special relationship that renders such losses limited and finite. *See, e.g.*, *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965). In *Bily v. Arthur Young*, 3 Cal. 4th 370 (1992), the court explained that the doctrine avoids "potentially infinite liability" threatened by claims for pure economic loss. It reaffirmed the doctrine as a general "no-duty" rule in *Quelimane Co. v. Steward Title Guaranty*, 19 Cal. 4th 26 (1998). There, the court reasoned that even though the economic injury might have been foreseeable, that was not enough reason to impose liability for negligent conduct absent a special relationship.

Over nearly sixty years of California jurisprudence has repeatedly affirmed that there is no general duty to avoid negligently injuring the purely economic expectations of others. Without intentional wrongdoing, the remedies for a purchaser's frustrated economic expectations lie in contract, while recovery for physical damage to person or property lies primarily in tort. *See Robinson Helicopter v. Dana Corp.*, 34 Cal. 4th 979, 988-9 (2004); *Bui v. Mercedes-Benz USA*, 2021 WL 242936, at *3 (S.D. Cal. Jan. 25, 2021) (holding that economic loss rule bars fraudulent concealment claim and observing—quoting *Robinson*—that "'[t]he economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise'").

This is confirmed by the *Restatement (Third) of Torts, Liability for Economic Harm*, which states the "general principle" that "[a]n actor has no general duty to avoid the unintentional infliction of economic loss on another." *Restatement (3d) Torts, Econ. Harm* § 1; *id.* at § 7, cmt. b (most courts "reject . . . categorically" claims for economic loss from the impact of negligent conduct on third parties).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The California Supreme Court has approved this formulation, observing that "the Restatement echoes widespread judicial concern that purely economic losses 'proliferate more easily than losses of other kinds' and 'are not self-limiting' in the same way." *In re Southern Cal. Gas Leak Cases*, 7 Cal. 5th 391, 407, 414 (2019) (holding that there was no duty in negligence to prevent purely economic losses, following the "prevailing rule of no recovery"). Here, the parties stand at arm's length; no special relationship is pled. This suit is grounded in Plaintiffs' alleged frustrated expectations in the product they bought from retailers and their desire for damages. Under the economic loss doctrine, they cannot pursue a negligence claim.

Plaintiffs sprinkle the term "physical harm" at the end of each of their causes of action, but they plead no facts to support a personal injury claim that could stave off the economic loss doctrine. The FAC contains *no* allegations of physical impairment, medical treatment, medical diagnosis, or pain and suffering. Although the FAC discusses *theoretical* potential physical harm to others (such as speculation about what *might* result from prenatal or neonatal exposure to alcohol) (FAC ¶¶ 28-29), it does *not* allege that such personal injury actually occurred to these two Plaintiffs, and neither of them brings this suit as a guardian on behalf of any minor who experienced a physical injury. The negligence and negligent misrepresentation claims are thus barred by the economic loss doctrine and, since Plaintiffs already amended their pleading in response to this argument, should be dismissed with prejudice.

**G. Plaintiffs Lack Standing to Seek Injunctive Relief.**

Plaintiffs seek injunctive relief in their Prayer for Relief. They bear the burden of establishing Article III standing to pursue such relief, which requires an injury in fact that is "likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). *Past* injury and *hypothetical* future injury are insufficient to meet this burden. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Davidson*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*v. Kimberly-Clark*, 889 F.3d 956, 967 (9th Cir. 2018). When a plaintiff seeks injunctive relief that would require changes to the product or its labeling to cure alleged deception, her only potential basis for standing to seek such relief is to plausibly allege that she intends to purchase the product again in the future. *See Davidson*, 889 F.3d at 969.[10]

Plaintiffs not only fail to allege any intent to buy Beck's NA in the future, they eschew the *entire category* of malt beverages that contain *any* amount alcohol. Plaintiff Karpinski even went so far as to throw away the remaining bottles from the six-pack he bought. (FAC ¶ 30.) As such, Plaintiffs have no potential for injury in the future, and thus, under Rule 12(b)(1), have no standing to seek injunctive relief. *See Yu*, 2020 WL 5910071, at *8 ("Given what Plaintiff knows about Defendants' products and his preference for applesauce and apple juice free of trace amounts of pesticides, the Court does not find it plausible that he would be misled into purchasing these Products in the future."); *Schertzer*, 445 F. Supp. 3d at 1075 (plaintiffs who did not allege that they would buy the product in the future did not have standing to seek injunctive relief under the UCL or CLRA); *Hanna v. Walmart, Inc.*, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020) (dismissing claim for injunctive relief, noting that "a plaintiff's allegation that he or she may purchase a product again is insufficient for purposes of establishing standing").

[10] Decisions applying *Davidson* have explained that the case does *not* stand for the "broad" proposition that "consumers deceived by false advertising have standing to seek injunctive relief" in every case. *Jackson v. General Mills*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020); *Cordes v. Boulder Brands USA*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018). Rather, "the threat of actual and imminent injury" is still required. *Jackson*, 2020 WL 5106652, at *5. No such threat exists when the "plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward." *Id.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## IV. CONCLUSION

For the foregoing reasons, A-B and A-B InBev respectfully request that the Court dismiss the FAC in its entirety, with prejudice.

Respectfully submitted,

Dated: March 5, 2021

**BAKER & HOSTETLER LLP**

By: */s/ David H. Stern*
DAVID H. STERN

*Attorneys for Defendants*
ANHEUSER-BUSCH INBEV WORLDWIDE, INC. and ANHEUSER-BUSCH, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## PROOF OF SERVICE

I, Nancy L. Brazil, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, California 90025-0509. I served a copy of the within document(s):

**DEFENDANTS ANHEUSER-BUSCH INBEV WORLDWIDE, INC.'S AND ANHEUSER-BUSCH, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(b)(6) AND 9(b)) AND FOR LACK OF STANDING UNDER RULE 12(B)(1)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. and the transmission was reported as complete and without error.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a [service company] agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☑ by transmitting via e-mail or electronic transmission the document(s) listed above to the e-mail address(es) set forth below on this date before 5:00 p.m. and the transmission was reported as complete and without error.

Thiago Coelho (SBN 324715)
Cinela Aziz (SBN 318192)
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010
Telephone: 213.381.9988
Facsimile: 213.381.9989
E-Mail: thiago@wilshirelawfirm.com
cinela@wilshirelawfirm.com

*Attorneys for Plaintiffs and the Putative Class*

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. Executed on March 5, 2021, at Los Angeles, California.

Nancy L. Brazil

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES